IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| **Michael Boveda,** | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:22cv1249 (RDA/WEF) |
| | ) | |
| **Bureau of Prisons,** *et al.*, | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION**

Michael Boveda ("Petitioner"), a federal prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the computation of his federal sentence by the Federal Bureau of Prisons ("BOP"). Respondents filed a Motion for Summary Judgment [Dkt. No. 6], supported by a brief, a declaration, and exhibits. [Dkt. No. 7]. On January 9, 2023, Petitioner was advised, in accordance with Local Rule 7(K) and *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right to respond. [Dkt. No. 8]. Petitioner sought and was granted an extension of time to respond and his response was due on or before February 21, 2023. [Dkt. Nos. 10-12]. The time to file a response has passed, but the Petitioner has not filed a response. The matter is therefore ripe for adjudication. For the reasons provided below, the motion for summary judgment is GRANTED and the petition is DISMISSED WITH PREJUDICE.

**I. Background**

Petitioner, a federal inmate incarcerated at the Federal Correctional Institution in Petersburg, Virginia ("FCI Petersburg"), alleges that the BOP should have awarded credit toward his federal sentence for the period of June 2, 2011 through August 28, 2013, during which time he was serving various Florida state sentences in state prison. Under 18 U.S.C. § 3585(b), however, Petitioner is not entitled to credit for time spent in service of another sentence, and the BOP determined, in its discretion, that a *nunc pro tunc* designation was not appropriate in Petitioner's

case, thus precluding credit on his federal sentence for time served on state sentences.[1] Petitioner argues that the state authorities released him to "primary" federal control on June 11, 2011. [Dkt. No. 1 at 4], and that the federal authorities erred by refusing to accept Petitioner into federal custody when he was released by Broward County, Florida, which resulted in Petitioner being transferred to Miami-Dade County, Florida custody. [*Id.*].

## II. Undisputed Material Facts

1. Petitioner was arrested by the Broward County Sheriff's Office in Broward County, Florida on October 25, 2009 and was charged with Trafficking in Marijuana, Possession of Firearm by Convicted Felon in Case No. 09-19842CF10B. Petitioner remained in the custody of Florida state authorities following his arrest on October 25, 2009. [Dkt. No. 7-1 at ¶ 5].

2. On August 10, 2010, Petitioner was charged in an 8-count indictment in the United States District Court for the Southern District of Florida for Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine. *United States v. Oberto, et al.*, Case No. 1:10cr20613 (S.D. Fla. Aug. 10, 2010).

3. On October 4, 2010, Petitioner was transferred to the temporary custody of the United States Marshals Service ("USMS") pursuant to a federal writ of habeas corpus *ad prosequendum* to face his federal charges. [Dkt. No. 7-1 at ¶ 7].

4  On May 12, 2011, Petitioner was sentenced in his federal case to a term of 174 months in prison for Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine. The federal court judgment was silent as to whether Petitioner's federal sentence should

---

[1] A *nunc pro tunc* designation is a sentencing designation by the BOP that a federal inmate's federal sentence commenced at the state facility where the inmate served time prior to the federal sentence, retroactively causing the federal sentence to run concurrently with the preceding state sentence. *See Setser v. United States*, 566 U.S. 231, 235 & n.1 (2012).

2

run consecutively or concurrently in relation to any yet-to-be-imposed state sentence. *United States v. Boveda*, Case No. 1:10cr-20613 (S.D. Fla. May 16, 2011); [Dkt. No. 7-1 at ¶ 8; Att. 3].

5. After federal sentencing, the USMS returned Petitioner to the primary custody of Florida state authorities on May 27, 2011. [Dkt. No. 7-1 at ¶ 9].

6. On June 2, 2011, Petitioner was sentenced in the 17th Judicial Circuit Court in and for Broward County, Florida in Case No. 09-19842CF10B to a term of 40.95 months (or 3 years, 4 months, and 29 days), with credit for 586 days. The state court ordered that this sentence should run concurrently with his previously imposed federal sentence. [Dkt. No. 7-1 at ¶ 9].

7. On June 9, 2011, Petitioner was transferred to the Florida Department of Corrections in connection with his state sentence. [Dkt. No. 7-1 at ¶ 11].

8. Petitioner completed his 40.95-month state sentence on October 16, 2012 but remained in the primary custody of Florida state authorities based on pending charges in Miami-Dade County, Florida. [Dkt. No. 7-1 at ¶ 12].

9. On January 8, 2013, Petitioner was sentenced by the 11th Judicial Circuit Court in and for Miami-Dade County, Florida to a four-year term of imprisonment for Aggravated Assault on Law Enforcement Officer, Fleeing and Eluding, in Case No. F07-015006.[2] On the same date, he was also sentenced to four-year terms for Fleeing/Eluding Police, Leaving Scene of Accident with Property Damage in Case Number F07-015007, and Battery on a Police Officer, Resisting Officer with Violence, and Fleeing, Eluding Police at High Speed in Docket Number F07-044364. The state court ordered that Petitioner receive credit toward these state sentences for the period of time from his arrest on October 25, 2009 through the imposition of these sentences. Additionally,

---

[2] Petitioner admits in his petition that a detainer was lodged against him in the Miami-Dade County cases, "F07-15006; F07-15007; F07-15009: F06-40248; and F07-44364," "immediately" after his arrest on October 25, 2009. [Dkt. No 1 at 1]. Petitioner was "on bond" with regard to the Miami-Dade offenses when he was arrested by Broward County authorities on October 25, 2009. [*Id.*].

3

the state court ordered that these state sentences should run concurrently with his federal sentence and the previous state sentence. [Dkt. No. 7-1 at ¶ 13].

10.     On August 28, 2013, Petitioner's Florida state sentences expired. Petitioner, however, had been released to the exclusive custody of the USMS on August 27, 2013. [Dkt. No. 7-1 at ¶ 14].

11.     The BOP prepared a sentence computation for Petitioner, commencing his 174-month sentence on August 27, 2013, the date he arrived in exclusive federal custody for service of his federal sentence. [Dkt. No. 7-1 at ¶ 18]. His federal sentence has been credited with five days of prior custody credit for the periods of November 30, 2006 through December 1, 2006; April 18, 2007 through April 19, 2007; and November 7, 2007, which were dates on which Petitioner had been arrested by Florida state authorities and subsequently released on bond or bail, and which had not been credited toward any other sentence. *Id.* Petitioner is scheduled to be released from his federal sentence on April 16, 2026, via good-conduct time release. *Id.*

12.     Because Petitioner's federal judgment was silent as to whether his federal sentence should run concurrent with or consecutive to any possible state sentence he may have been facing, the BOP was obligated to contact the federal sentencing court regarding this matter. [Dkt. No. 7-1 at ¶ 23]. In accordance with BOP Program Statement 5160.06, on October 8, 2014, the BOP sent a letter to the Hon. K. Michael Moore, Chief Judge, United States District Court for the Southern District of Florida, to seek the federal sentencing court's position regarding whether Petitioner's federal sentence operates concurrently with or consecutively to his state sentences. [*Id.* at ¶ 24].

13.     On October 20, 2014, Chief Judge Moore responded to the BOP: "It is my judgment that the federal sentence was not intended to run concurrent, nor should it retroactively run concurrent, with the state sentence." [Dkt. No. 7-1 at ¶ 25; Att. 15].

14.     BOP Program Statement 5880.28, Sentence Computation Manual (CCCA of 1984), provides: "A prisoner who is in non-federal custody at the time of sentencing may begin service of the federal sentence prior to arriving at the designated federal facility if the non-federal facility is designated in accordance with the Program Statement on Designation of State Institution for Service of Federal Sentence and 18 U.S.C. § 3621." [Dkt. No. 7-1 at ¶ 22].[3]

15.     On November 3, 2014, the BOP conducted an individualized review of the five statutory factors in 18 U.S.C. § 3621 to determine if a *nunc pro tunc* designation was appropriate in Petitioner's case. [Dkt. No. 7-1 at ¶ 27]. In particular, the BOP considered: the resources of the facility contemplated; the nature and circumstances of the offense; the history and characteristics of the prisoner; any statement by the court that imposed the sentence; and any pertinent policy statement issued by the Sentencing Commission. [Dkt. No. 7-1 at ¶ 28].

16.     In reviewing these factors, the BOP noted that factors two, three, and four applied to Petitioner's situation. *Id.* With respect to factor two, the BOP found that Petitioner's various state offenses were not related to the conduct giving rise to his federal conviction. *Id.* For the third factor, the BOP noted Petitioner's history of institutional misconduct while in BOP custody, as well as his prior criminal record. *Id.* In consideration of the fourth factor, although the federal court's judgment did not express an opinion on concurrency or consecutiveness, the BOP contacted the sentencing judge, who indicated that he had no intent for the federal sentence to run concurrently with the state sentences. *Id.* After a review of the applicable statutory factors for a *nunc pro tunc* designation, the BOP decided not to exercise its discretion to award such a designation. *Id.*

---

[3] The full text of BOP Program Statement 5880.28 is available on the BOP's public website at https://www.bop.gov/policy/progstat/5880_028.pdf. (last viewed Apr. 19, 2023).

## III. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the non-moving party will bear the burden of proof, the moving party's obligation is satisfied upon a showing that there is a lack of evidence to carry the non-moving party's burden on an essential element of that party's cause of action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party must then go beyond the pleadings and allegations and establish the existence of specific factual disputes necessitating a trial. *See Id*. The non-movant cannot survive summary judgment by establishing "[t]he mere existence of a scintilla of evidence in support" of his position; to the contrary, he must proffer "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Most importantly, as the rule itself provides, to survive summary judgment, any factual dispute plaintiff identifies must be material— *i.e.*, it must make a difference to the outcome of the underlying claims. *Id*. at 248; *Metric/Kvaerner Fayetteville v. Fed. Ins. Co.*, 403 F.3d 188, 197 (4th Cir. 2005).

## IV. Analysis

A federal prisoner may challenge the BOP's calculation of the duration of a sentence by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Fontanez v. O'Brien*, 807 F.3d 84, 86-87 (4th Cir. 2015). To obtain habeas relief, the federal prisoner must show that he is being detained in federal custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, Petitioner contends he should receive credit toward his federal sentence for the period of June 2, 2011 through August 26, 2013, during which time he

was serving his various Florida state sentences.[4] Petitioner, however, is not entitled to receive credit toward his federal sentence for this period of time because his federal sentence did not commence until after that time and he may not double count the time served toward his state sentences. Moreover, the BOP has reviewed Petitioner's case for a possible *nunc pro tunc* designation of his Florida state institution as a place of confinement for his federal sentence and has determined that such a designation is not appropriate.

After a federal district court sentences a federal offender, the Attorney General, through the BOP, is responsible for administering the offender's sentence, 18 U.S.C. § 3621(a); 28 C.F.R. § 0.96; *United States v. Wilson*, 503 U.S. 329, 335 (1992), and the BOP is responsible for determining when a federal prisoner's sentence commences and expires, including how to apply credit to a prisoner's federal sentence for prior custody and good conduct. 18 U.S.C. §§ 3585, 3624; *United States v. Wilson*, 503 U.S. at 334. The BOP determined that Petitioner's 174-month federal sentence commenced on August 27, 2013, the date he arrived in primary federal custody for the purpose of serving his federal sentence. "The authority to determine when a federal sentence commences is uniquely BOP's, subject to federal judicial review under a deferential abuse-of-discretion standard." *Wheelock v. Wilson*, 2014 WL 354505, at *4 (E.D. Va. Jan. 30, 2014); *see United States v. Wilson*, 503 U.S. at 335. A federal term of imprisonment commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentences at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Where, as here, an inmate is subject to sentences imposed by both federal and state courts—different sovereigns—the sovereign that arrested him first acquires and maintains

---

[4] In his petition, Petitioner also seeks credit for August 27 and 28, 2013 [Dkt. No. 1 at 6], but the FOB has already credited those days against his sentence because it calculated his sentence using August 27, 2013 as the date he began serving his federal sentence. [Dkt. No 7-1 at ¶ 18].

"primary jurisdiction" over him until the sentence imposed by that sovereign has been satisfied. *United States v. Evans*, 159 F.3d 908, 912 (4th Cir. 1998). In other words, "the first sovereign to arrest an offender has priority of jurisdiction over him for trial, sentencing, and incarceration, and that jurisdiction continues until the first sovereign relinquishes its priority by, for example, bail release, dismissal of the state charges, parole release, or expiration of the sentence." *Barnes v. Warden of Lee Cty.*, 2019 WL 157735, at *2-3 (W.D. Va. Jan. 10, 2019) (citation omitted).

It is undisputed that Florida state authorities arrested Petitioner on October 25, 2009, thus acquiring primary jurisdiction over him. His transfer to federal authorities in October 2010 did not relinquish that priority; on the contrary, it is well established that "[t]emporary release of an offender pursuant to a writ of habeas corpus *ad prosequendum* does not relinquish primary jurisdiction." *Wheelock*, 2014 WL 354505, at *4 (citing cases). "This rule derives from the fact that the federal writ of habeas corpus *ad prosequendum* merely loans the prisoner to federal authorities." *Evans*, 159 F.3d at 912; *see Rios v. Wiley*, 201 F.3d 257, 272 (3rd Cir. 2000) (a prisoner is not entitled to prior custody credit for time spent in federal detention pursuant to a writ of habeas corpus *ad prosequendum*, when the time period was credited against his state sentence, because he already had been sentenced on the state offense and was serving that sentence during the relevant time period). The time that Petitioner, "a state prisoner, spent 'on loan' to federal authorities" therefore did "not serve to interrupt the state's custody" over him, *Brown v. Zych*, 2012 WL 5386339, at *3 (W.D. Va. Nov. 1, 2012), meaning that Petitioner was still in state custody when Florida "loaned" him to federal authorities, pursuant to the federal writ of habeas corpus ad prosequendum, from October 4, 2010 through May 27, 2011. [Dkt. No. 7-1 at ¶¶ 7- 9]. Florida's primary custodial authority of Petitioner continued until August 27, 2013, when it released him to federal custody in connection with the expiration of his state sentences. [*Id.* ¶ 14].

The state retains primary jurisdiction over the prisoner, and federal custody commences only if Florida "relinquish[ed] the prisoner on satisfaction of the state obligation." *Barnes*, 2019 WL 157735, at *2-3 (citation omitted); [Dkt. No. 7-1 at ¶ 14].

Petitioner's argument that the BOP incorrectly determined that he began serving his federal sentence on August 27, 2013, when he first entered primary federal custody, is unavailing. His argument relies on a handwritten notation on the June 2, 2011 disposition in Broward County that provides: "Return Defendant to Federal Custody." [Dkt. 1-2]. That notation does not bind federal authorities to credit the state time against his federal sentence, however. "The determination by federal authorities that [a defendant's] federal sentence would run consecutively to his state sentence is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained state conviction." *Hunter v. Tamez*, 622 F.3d 427, 430 (5th Cir. 2010) (citation omitted).[5] Contrary to his argument, the Broward County judgment in Petitioner's state case makes it clear that he was "committed to the custody of the [Florida] Department of Corrections" to serve the state sentence imposed on June 2, 2011. [Dkt. No. 7-1 at 26, 29].

Petitioner also argues that his first state sentence ended "in October 2012," and that "federal authorities" allegedly refused to take custody of him as required by the notation on the June 2, 2011 disposition. [Dkt. No. 1 at 2]. Although Petitioner's first state sentence was satisfied on October 16, 2012, Florida authorities continued to detain him after that date because he then had pending charges in Miami-Dade County—charges for offenses that pre-dated the Broward County

---

[5] *Accord Jake v. Herschberger*, 173 F.3d 1059, 1066 (7th Cir. 1999) ("The state court's designation of [the defendant's] state sentence as concurrent with his prior federal sentence created no obligation on the Attorney General to provide him with credit for time served in the state prison."); *Pinaud v. James*, 851 F.2d 27, 30 (2d Cir. 1988) (reasoning that the defendant cannot, through agreement with state authorities, compel the federal government to grant a concurrent sentence).

9

offenses as well as the federal offense. Petitioner was sentenced on January 8, 2013 for the several Miami-Dade County offenses. [Dkt. No. 7-1 at ¶¶ 12-13]. Indeed, Petitioner admits that a detainer was lodged "immediately" after his arrest on October 25, 2009 for the Miami-Dade County offenses. And the online records of the Florida Department of Corrections show that Miami-Dade County also filed a detainer with the Department of Corrections on June 15, 2011, indicating that Florida had not relinquished its "primary" custodial authority.[6]

Lastly, the BOP did not abuse its discretion in declining to make a *nunc pro tunc* designation in Petitioner's case. *See Trowell v. Beeler*, 135 F. App'x 590, 593 (4th Cir. 2005) ("We review BOP's decision to grant or deny a prisoner's *nunc pro tunc* designation request for abuse of discretion."). The decision to make a *nunc pro tunc* designation of a federal prisoner's place of confinement is committed to the BOP's "broad discretion." *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 1990); *accord Trowell*, 135 F. App'x at 594; *Rabb v. Wilson*, 2015 WL 731475, at *5 (E.D. Va. Feb. 19, 2015) (noting that *Barden* is "the seminal case governing the BOP's ability to make *nunc pro tunc* designations").[7] In exercising this discretion, the governing statute sets out a list of factors for the BOP's to consider: (1) the resources of the non-federal facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the sentencing court; and (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2). 18 U.S.C. § 3621(b).

---

[6] *See* http://www.dc.state.fl.us/OffenderSearch/Search.aspx (search "Boveda, Michael") (last viewed on Apr. 19, 2023); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (explaining that the "most frequent use of judicial notice of ascertainable facts is in noticing the content of court records") (collecting cases); *Lynch v. Leis*, 382 F.3d 642, 647 & n.5 (6th Cir. 2004) (taking judicial notice of state court records available to public online).

[7] Absent a *nunc pro tunc* designation, the relief Petitioner seeks would be barred by 18 U.S.C. § 3585(b), which allows the BOP to award credit toward a federal sentence "for any time . . . spent in official detention prior to the date the sentence commences" *only* when that time "has not been credited against another sentence." Here, the time Petitioner seeks to have credited toward his federal sentence has already been credited toward his state sentences and would thus constitute impermissible "double credit." *Dais v. LaManna*, 2006 WL 2642604, at *6 (D.S.C. Sept. 13, 2006), *aff'd*, 224 F. App'x 292 (4th Cir. 2007).

The BOP found that factors two, three, and four were relevant to whether Petitioner should receive a *nunc pro tunc* designation. Petitioner argues that he should receive credit for the time spent serving his state sentences because the Florida state courts ordered his state sentences to run concurrently with his federal sentence. [Dkt. No. 1 at 3-5]. His argument fails because it conflates the authority of state courts over state sentences with the federal courts' authority over federal sentences. The authority to determine whether a federal sentence is to run concurrently with or consecutively to a state sentence rests with the federal district courts. *Setser*, 566 U.S. at 236. "[The BOP is not bound by the state court's sentencing preference in the *nunc pro tunc* analysis." *Mangum v. Hallembaek*, 910 F.3d 770, 778 (4th Cir. 2018).

In Petitioner's case, because the sentencing order was silent regarding the consecutiveness or concurrence of the federal sentence, the BOP sought the sentencing judge's view regarding the nature of the federal sentence, which is "highly relevant" to the *nunc pro tunc* analysis. *Mangum v. Hallembaek*, 910 F.3d 770, 778 n.6. (4th Cir. 2018). The district court judge responded that Petitioner's "federal sentence was not intended to run concurrent, nor should it retroactively run concurrent, with the state sentence." [Dkt. No. 7-1 at Att. 15]. The BOP thus did not abuse its discretion in determining, regarding factor four of the *nunc pro tunc* analysis, that Petitioner's federal sentence was meant to run consecutively to his state sentences.

## V. Conclusion

For the foregoing reasons, Respondents' Motion for Summary Judgment [Dkt. No. 6] is GRANTED, and the petition will be DISMISSED WITH PREJUDICE. An appropriate Order and judgment shall issue.

Entered this 24th day of April 2023.

Alexandria, Virginia

/s/
Rossie D. Alston, Jr.
United States District Judge